**F I L E D**

PUBLISH

**April 3, 2007**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 06-6274

MICHAEL A. BARROWS,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR 06-006-01-HE)**

---

Robert A. Manchester, III, Oklahoma City, Oklahoma, for the Defendant-Appellant.

Timothy W. Ogilvie, Assistant U.S. Attorney (John C. Richter, United States Attorney, with him on the brief), Oklahoma City, Oklahoma for Plaintiff-Appellee.

---

Before **O'BRIEN**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

The Fourth Amendment affords citizens broad protection from state-sponsored searches and seizures, but not in every circumstance and not for every item. In this appeal, we must determine whether the defendant possessed a

reasonable expectation of privacy in the personal computer he brought to work, sufficient to warrant protection from a government search. We conclude that he did not and AFFIRM.

## I.

At the time he was charged with criminal conduct, Michael Barrows served as the treasurer for the city of Glencoe, Oklahoma, a town located just north of Stillwater and approximately sixty miles northeast of Oklahoma City. Mr. Barrows shared a workspace with the city clerk in an open area of the city hall. Although a counter cordoned off their common work area from the general public, Mr. Barrows and the city clerk enjoyed little privacy. Other city employees regularly entered their space to use the city's fax machine and photocopier, which were located approximately a foot from Mr. Barrows's and the city clerk's desk.

Mr. Barrows and the city clerk shared a computer in addition to desk space, and both used it to access city records and programs. They could not, however, use the computer simultaneously. To remedy this inconvenience, Mr. Barrows brought his personal computer to work. He placed the machine on the common desk and connected it via the city network to the common computer. Mr. Barrows informed his co-worker that this way, he and she could input data simultaneously and access city files from either computer.

Thereafter, Mr. Barrows conducted all of his city work on his personal computer. He did not install a password shield or otherwise attempt to exclude

city employees from using his machine or gaining access to his files. Indeed, he left the computer running at all times—even in the evenings and while he was away from his desk.

At approximately the time Mr. Barrows networked the two computers, the city clerk began to experience difficulty opening files on the city machine. She wondered whether Mr. Barrows's computer had something to do with the problem. On the afternoon of May 19, 2005, she complained about the problem to Michael McQuown, a reserve police officer who happened to be in city hall that afternoon to send a fax. Officer McQuown was a former computer salesman; he had helped the clerk manage computer difficulties before.

Officer McQuown proceeded to open various files and delete others on the city machine in an effort to speed its operation. Still, after approximately forty-five minutes of tinkering, he found himself unable to access a file in the city's QuickBooks accounting program. At some point, the clerk informed McQuown that Mr. Barrows had networked his personal computer to the city machine, leading the officer to suspect that he could not open the file in question because the defendant had opened it on his computer.

When Officer McQuown sat down at Mr. Barrows's computer, which was switched on, as usual, he noticed almost immediately that the defendant was running a file-sharing program. McQuown wondered if Mr. Barrows had transferred the QuickBooks file to a remote machine. McQuown clicked open the

file-sharing program and accessed the transfer history. When he did, he observed a series of files with sexually suggestive names. Opening two or three, he found they contained child pornography.

After McQuown confirmed that at least a few of the files contained illegal pornography, he and the sheriff seized the computer and obtained a warrant to search the entire hard drive. Mr. Barrows pled guilty to child pornography charges pursuant to a conditional plea agreement. He was sentenced to 78 months in prison. Now he appeals from the district court's denial of his motion to suppress.

## II.

The Fourth Amendment guards against unreasonable searches and seizures. *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'. . . ."). A warrantless search may be unreasonable if the defendant enjoyed a legitimate expectation of privacy in the thing searched. *See United States v. Anderson*, 154 F.3d 1225, 1229 (10th Cir. 1998). This Court must determine whether Mr. Barrows possessed a legitimate expectation of privacy in his personal computer, an inquiry we make by asking two questions. First, did Mr. Barrows manifest a subjective expectation of privacy in the machine? Second, is that expectation one society is prepared to recognize as reasonable? *Id.* "The 'ultimate question' is whether [the

-4-

defendant's] claim to privacy from the government intrusion is reasonable in light of all the surrounding circumstances." *Id.*

Since this incident occurred in the workplace, those surrounding circumstances include "(1) the employee's relationship to the item seized; (2) whether the item was in the immediate control of the employee when it was seized; and (3) whether the employee took actions to maintain his privacy in the item." *Id.* at 1232. These factors are relevant to both the subjective and objective prongs of the reasonableness inquiry, and we consider the two questions together.

To begin, Mr. Barrows makes much of the fact that he owned the computer. And he is right that private ownership is an important factor telling in favor of Fourth Amendment protection. *United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990). It is not, however, dispositive. *See United States v. Erwin*, 875 F.2d 268, 270-71 (10th Cir. 1989) ("[O]wnership of [an] item seized is not determinative. . . ."). If it were, the Fourth Amendment would track neither tort law nor social expectations of privacy, for neither affords individuals an absolute veto over third-party access to an item by virtue of ownership alone. But the significance of personal ownership is particularly weakened when the item in question is being used for business purposes. *See, e.g.*, Wayne R. LaFave, Search & Seizure § 11.3(d) (4th ed. 2004) ("Particularly in an otherwise close case, a court may be influenced by the defendant's relationship to or interest in the particular item seized. It may be significant, therefore, that this item is a personal

possession of the defendant and *not something connected with the operation of the business. . . .*" (emphasis added)). Mr. Barrows voluntarily transferred his personal computer to a public place for work-related use. In these circumstances, we cannot say that mere ownership is enough to demonstrate a subjective expectation of privacy or to make that expectation reasonable.

More weighty for determining privacy expectations in the workplace, which must be considered case by case, *see United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002), is Mr. Barrows's failure to password protect his computer, turn it off, or take any other steps to prevent third-party use. Given these facts, we are hard-pressed to conclude that Mr. Barrows harbored a subjective expectation of privacy. He certainly did not possess a reasonable one.

Mr. Barrows claims that he invited no one to use his computer and therefore expected its contents to remain private. Yet he surely contemplated at least some third-party access: he knowingly networked his machine to the city computer for the express purpose of sharing files. And though the record does not reflect whether an employee operating the city computer could access all of Mr. Barrows's files or only a few, the fact remains that Mr. Barrows knew the contents of his machine were not wholly private. He also knew when he chose to relocate his computer to city hall that he would be working in a public area. City employees and members of the general public passed in and out all day. The chances a passerby might spy snatches of personal material over his shoulder, or

sit down to use his computer having honestly mistaken it for a city one, were appreciable.

Even if Mr. Barrows did possess a subjective expectation of privacy, his failure to take affirmative measures to limit other employees' access makes that expectation unreasonable. *Angevine*, 281 F.3d at 1135; *see O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) ("[S]ome government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable."). Those who bring personal material into public spaces, making no effort to shield that material from public view, cannot reasonably expect their personal materials to remain private. Home owners who place personal effects in their driveways cannot reasonably anticipate that those items will go unobserved. *United States v. Long*, 176 F.3d 1304, 1308-09 (10th Cir. 1999) (citing *California v. Greenwood*, 486 U.S. 35, 41 (1988)). Apartment tenants who move personal items into a common hallway cannot reasonably believe those items will be left uninspected. *See United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998) (holding that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building); *accord United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993), *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992), *United States v. DeWeese*, 632 F.2d 1267, 1270 (5th Cir. 1980).

Mr. Barrows voluntarily moved his personal computer into a public space and took no measures to protect its contents from public inspection.

Consequently, he did not enjoy a reasonable expectation of privacy and Officer McQuown's search worked no Fourth Amendment violation. The judgment of the district court is **AFFIRMED.**