THOMAS, J.
This is a case of first impression regarding the validity of the search of checked airline luggage. Appellant pled nolo con-tendré to 194 counts of possession of child pornography, reserving his right to appeal the trial court’s denial of two motions to suppress. We affirm without comment the denial of Appellant’s motion to compel discovery, which was not preserved for appellate review. We also affirm the denial of Appellant’s motion to suppress evidence found during an administrative search, and write to explain why the denial was not an abuse of discretion. Because we affirm the denial of the motion to suppress the evidence found during the search, we also affirm the denial of the motion to suppress statements made by Appellant during custodial interrogation.

Facts

Appellant arrived at the Pensacola Regional Airport for a flight to Colorado, checked in at the airline ticket kiosk, and registered one suitcase. He received a luggage tag and receipt and proceeded to a Transportation Security Administration (TSA) checkpoint for checked baggage. Appellant’s checked suitcase was swabbed by a TSA officer. Appellant testified the officer also opened an accordion-type folder found in the suitcase and swabbed it. The swab was then tested for trace amounts of explosives using an Explosive Detection System (EDS). Appellant’s bag was cleared, the officer handed him his boarding pass, and Appellant proceeded to the personal security checkpoint. Appellant did not set off the magnetometer, and *516 his carry-on luggage did not arouse suspicion when x-rayed. Appellant proceeded to the terminal to await his flight.
Unbeknownst to Appellant, his checked suitcase was opened and physically searched by a TSA officer. The officer testified that TSA protocol required her to physically examine the inner contents of a preselected and random number of checked baggage. During the search, the TSA officer took out the accordion folder and opened it, removed the papers and flipped through them. The officer testified that TSA protocol required her to “thumb through” any thick stack of papers she found to search for potentially dangerous materials. She then discovered approximately 10 photographs, prompting her to contact a supervisor. An airport police officer arrived and was informed that the file contained child pornography.
Airport police contacted local law enforcement, and Appellant was detained. A detective applied for and received a warrant to search Appellant’s computer, camera, picture card, burned compact discs, flash drives, external hard drive, and briefcases, all of which were found in Appellant’s checked suitcase. Additional flash drives were later found when the detective separated Appellant’s personal property from the evidence, and an additional warrant was obtained to search those drives. Based on the evidence discovered during the searches, Appellant was charged with 196 counts of possessing child pornography.
Appellant moved to suppress all evidence seized from his suitcase, alleging the physical search of his checked baggage outside his presence violated the Fourth Amendment of the United States Constitution. Specifically, Appellant alleged the search was not minimally intrusive because available technology in use at the airport provided TSA a means to search his unopened baggage for dangerous contraband without searching the bag’s contents. The trial court denied the motion to compel, but granted an in camera review to determine whether TSA’s standard operating procedures were relevant. Pursuant to its review, the court denied the motion to suppress, finding TSA’s procedures and administrative search did not violate Appellant’s Fourth Amendment rights. Appellant was adjudicated guilty after pleading nolo contendré and sentenced to 30 months in prison.

Analysis

The standard of review on a motion to suppress is a mixed question of fact and law. Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998). In reviewing a trial court’s factual findings, this court looks to whether competent, substantial evidence supports the trial court’s findings. This court reviews the trial court’s application of the law de novo. Id.
This is an issue of first impression; our independent research has not revealed any case directly deciding whether a purely administrative, physical search of checked luggage violates the Fourth Amendment. See United States v. Fofana, 620 F.Supp.2d 857, 861-62 n. 2 (S.D.Ohio 2009) (noting United States Supreme Court has not directly ruled on reasonableness of domestic airport checkpoint searches); cf. United States v. McCarty, 672 F.Supp.2d 1085, 1091 (D.Hawai’i 2009) (examining administrative physical search of passenger’s checked luggage where suspicion was aroused by x-ray of the luggage). Florida courts are required to interpret search and seizure issues in conformity with the Fourth Amendment of the United States Constitution, as interpreted by the United States Supreme Court. See art. I, § 12, Fla. Const.
*517 Without precedent from the United States Supreme Court, we look to state and federal decisions for guidance. See Soca v. State, 673 So.2d 24, 26 (Fla.1996) (explaining “when the United States Supreme Court has not previously addressed a particular search and seizure issue which comes before us for review, we will look to our own precedent for guidance.”); see generally Jones v. State, 459 So.2d 1068, 1072 (Fla. 2d DCA 1984) (turning to case law from other states where there was no case directly on point from United States Supreme Court or federal courts concerning alleged Fourth Amendment violation).
In general, a warrantless search is per se unreasonable unless the search or seizure falls into one of the well established exceptions to the warrant requirement. Jones v. State, 648 So.2d 669, 674 (Fla.1994). The government bears the burden of proving that a warrantless search was conducted pursuant to an established exception. United States v. Oliver, 686 F.2d 356, 371 (6th Cir.1982).
Administrative searches in airports are an established exception. See United States v. Aukai, 497 F.3d 955, 959 (9th Cir.2007) (“airport screening searches ... are constitutionally reasonable administrative searches because they are ‘conducted as part of a general regulatory scheme’ ”) (quoting United States v. Davis, 482 F.2d 893, 908 (9th Cir.1973)). In 1980, the Florida Supreme Court held that a person attempting to board an airplane may be searched without probable cause within the security area of an airport as long as the search is reasonable and conducted solely for the purpose of discovering an immediate threat to air commerce. Shapiro v. State, 390 So.2d 344, 350 (Fla.1980).
Consent is not required to conduct an airport screen search, if the search is otherwise reasonable and conducted pursuant to statutory authority. McCarty, 672 F.Supp.2d at 1096. “To determine the reasonableness of an administrative airport search, the Court must balance an individual’s right to be free of intrusion with ‘society’s interest in safe air travel.’ ” Fofana, 620 F.Supp.2d at 862 (quoting United States v. Pulido-Baquerizo, 800 F.2d 899, 901 (9th Cir.1986)). But, “the need for heightened security does not render every conceivable checkpoint search procedure constitutionally reasonable.” Id. at 866. Accordingly, “an airport security search is reasonable if: (1) the search is ‘no more extensive or intensive than necessary, in light of current technology, to detect the presence of weapons or explosives;’ (2) the search ‘is confined in good faith to that purpose;’ and (3) a potential passenger may avoid the search by choosing not to fly.” Id. (quoting United States v. Aukai, 497 F.3d 955, 962 (9th Cir.2007) (en banc)).
We first address whether the search in this case was unnecessarily extensive or intrusive, in light of the available technology. All cargo transported on a passenger aircraft must be screened. 49 U.S.C.A. § 44901(g)(1). Screening is further defined to include physical searches when combined with manifest verification. U.S.C.A. § 44901(g)(5). All checked baggage must be screened by an EDS machine. U.S.C.A. § 44901(d)(1)(A). Until an airport possesses an EDS machine, TSA officers are permitted to use other alternative screening methods, including manual searches. U.S.C.A. § 44901(e)(2). The statute does not foreclose the possibility using an EDS machine in conjunction with physical searches to meet the mandate that all bags must be screened. See id.
The trial court’s order denying Appellant’s motion to suppress reveals that the airport possessed not only an EDS, but *518 also an Explosive Trace Device System (ETDS). The trial court determined, after reviewing TSA’s protocol in camera, that the physical search of Appellant’s checked suitcase did not violate 49 U.S.C.A. § 44901 and was no more intrusive or extensive than necessary. Our independent review of the protocol leads us to the same conclusion.
TSA’s protocol required officers to physically open a certain number of randomly selected bags, swab the inner contents, and test the swabs in one of the explosive detection machines. The TSA officer’s testimony was that she discovered several photographs while thumbing through a large file. TSA’s protocol reveals that the TSA officer had the discretion to flip through the papers found in Appellant’s bag while conducting the open bag search in lieu of swabbing every piece of paper. See also McCarty, 672 F.Supp.2d at 1098 (suggesting TSA officers had authority and discretion to leaf through photographs when searching for sheet explosives). Thus, without more evidence proving that such a search was unnecessary given the current technology, we hold that the search was no more extensive or intrusive than necessary in light of current technology-
Recently, two federal district courts determined similar administrative airport searches were unreasonable because they were not confined, in good faith, to searching for weapons or explosives. See Fofana, 620 F.Supp.2d at 863-64; McCarty, 672 F.Supp.2d at 1096. These opinions are distinguishable but instructive.
In Fofana, an airline passenger was “flagged” at check-in for enhanced screening at the personal security checkpoint. 620 F.Supp.2d at 859. The passenger and his carry-on bag passed through the security checkpoint without setting off the magnetometer or the x-ray machine. Id. Because he had been flagged for additional screening, the passenger’s carry-on bag was emptied and the contents were thoroughly searched. Id. at 859-60. A TSA officer found several envelopes which she believed contained cash. Id. The officer did not believe the envelopes contained explosives or weapons, but because she had been trained to look for large quantities of cash as evidence of likely criminal activity, she opened all the envelopes. Id. at 860-61. The search uncovered false passports and evidence of bank fraud. Id. at 861. Holding that the search violated the passenger’s Fourth Amendment right against unreasonable searches, the court explained that “the evidence in this case shows that the extent of the search went beyond the permissible purpose of detecting weapons and explosives and was instead motivated by a desire to uncover contraband evidencing ordinary criminal wrongdoing.” Id. at 863.
Similarly, the court in McCarty held that a TSA officer’s search of photographs in an envelope in a carry-on bag exceeded the scope of the officer’s authority when the officer stopped looking for weapons or explosives and began looking for evidence of child pornography. 672 F.Supp.2d at 1096-97. Like the case sub judice, the passenger’s suitcase in McCarty was opened and physically searched outside the passenger’s presence. Id. at 1091-92. Unlike the facts of this appeal, however, the passenger’s checked bag in McCarty was opened only after an x-ray of the bag indicated it contained a dense item that could have been dangerous, although the TSA screeners believed it to be a laptop computer. Id. at 1092. The TSA officer in McCarty testified a photograph envelope and its contents fell out when the bag was opened to retrieve the item that set off the x-ray alarm. Id. The officer then went through the contents of the photograph envelope and found evidence of child pornography. Id. at 1092-93. The court *519 explained that what began as a permissible administrative search became impermissible when the officer’s focus switched from leafing through the photographs to look for sheet explosives to inspecting the contents of the envelope for evidence of child pornography. Id. at 1096-98.
Unlike the officers in McCarty and Fofana, the TSA officer’s testimony in this case demonstrates her search remained confined, in good faith, to the purpose of searching for explosives or weapons. The TSA officer’s testimony was simple and unwavering: She was required to open a certain number of bags; Appellant’s bag was the next randomly selected bag; she was required to thumb through the contents of the accordion-type file folder found in Appellant’s bag, under TSA protocol; and she saw the photographs as soon as she opened the folder. She immediately stopped the search and contacted a supervisor. “The mere fact that a screening procedure ultimately reveals contraband other than weapons or explosives does not render it unreasonable, post fac-to.” United States v. Marquez, 410 F.3d 612, 617 (9th Cir.2005). Unlike the officers in Fofana and McCarty, the TSA officer’s testimony here did not hint that she was intentionally looking for evidence of criminal behavior.
Assuming arguendo that the search in this case ran afoul of the Fourth Amendment, we would uphold the trial court’s decision to not suppress the evidence in this case under the good faith exception to the warrant requirement, and because the extreme sanction of exclusion is not always justified. Illegally seized evidence is not automatically suppressed. Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 698, 172 L.Ed.2d 496 (2009). The TSA officer’s conduct in this case was based on TSA protocol and was not “deliberate, reckless, or grossly negligent.” Id. It is unlikely that a “ ‘reasonably well trained officer would have known that the search was illegal.’ ” Id. (quoting United States v. Leon, 468 U.S. 897, 922 n. 3, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)); but see Fofana, 620 F.Supp.2d at 866 n. 5 (declining to apply good faith exception to the exclusionary rule in the context of an airport screening search where no warrant was obtained); McCarty, 672 F.Supp.2d at 1103-04 (noting Herring may apply to some Fourth Amendment violations resulting from warrantless searches, but determining exclusion was warranted under the facts of the case). Based on our applicable standard of review of the facts and law, we hold that the TSA agent was not engaged in “general law enforcement objectives” when she discovered the child pornography. Cf. Fofana, 620 F.Supp.2d at 863-65.
Accordingly, we hold that the trial court’s denial of Appellant’s motion to suppress was not an abuse of discretion.
AFFIRMED.
KAHN, J., concurs; VAN NORTWICK, J., concurs in result only.